CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

MARGARET C. NAMMAR #9045
Assistant U.S. Attorney
NICOLE HUDSPETH #11079
Special Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:   (808) 541-2850
Email:   Margaret.Nammar@usdoj.gov
         Nicole.Hudspeth@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 21-00070 JAO |
|---|---|---|
| | ) | |
| Plaintiff, | ) | UNITED STATES OF AMERICA'S |
| | ) | MOTIONS *IN LIMINE* TO: |
| vs. | ) | (1) ADMIT EXPERT TESTIMONY; |
| | ) | (2) ADMIT RECORDED CALLS |
| BLAINE LOUIS JACINTHO   (01) | ) | AND TEXT/CHAT MESSAGES; |
| and | ) | (3) ADMIT DEFENDANTS' POST- |
| KEONI ALLEN HOLI,      (02) | ) | ARREST STATEMENTS; AND |
| | ) | (4) PRECLUDE DEFENDANTS |
| Defendants. | ) | FROM MAKING ANY |
| | ) | REFERENCE TO ENTRAPMENT |
| | ) | PRIOR TO GOVERNMENT |
| | ) | CALLING FIRST WITNESS; |
| | ) | EXHIBITS 1 & 2; CERTIFICATE |
| | ) | OF SERVICE |
| | ) | |
| _____ | ) | |

|     |                          |
| --- | ------------------------ |
| )   | TRIAL                    |
| )   | DATE:   June 5, 2023     |
| )   | TIME:    9:00 a.m.       |
| )   | JUDGE: Hon. Jill A. Otake |
| )   |                          |

UNITED STATES OF AMERICA'S
MOTIONS *IN LIMINE* TO: (1) ADMIT EXPERT TESTIMONY;
(2) ADMIT RECORDED CALLS AND TEXT/CHAT MESSAGES;
(3) ADMIT DEFENDANTS' POST-ARREST STATEMENTS; AND
(4) PRECLUDE DEFENDANTS FROM MAKING ANY REFERENCE TO
ENTRAPMENT PRIOR TO GOVERNMENT CALLING FIRST WITNESS

The United States of America, by and through Clare E. Connors, United

States Attorney, and undersigned counsel, hereby moves *in limine* to admit certain

evidence, as set forth below, at the trial in the above-captioned case.

**(1)  Motion *in Limine* to Admit Expert Testimony**

The United States seeks to offer expert testimony at trial regarding:   (i) the

drug analysis and identification by forensic chemists employed by the Drug

Enforcement Administration ("DEA"); (ii) the drug trafficking practices, including

the use of code words, street value of drugs, quantities of methamphetamine and

cocaine that are consistent with distribution, as opposed to personal use, common

packaging and importation methods for smuggling controlled substances into the

District of Hawaii, and the use of cellular telephones in furtherance of drug

trafficking; and (iii) the extraction of data from two cellular telephones seized from

the defendants.

If specialized knowledge will help the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question.   Fed. R. Evid. 702.   The trial court has broad discretion to admit expert testimony.   *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999).   An expert witness may base an opinion on the facts or data in the case.   Fed. R. Evid. 703.   However, the facts or data underlying the expert's opinion need not be admissible for the opinion to be admitted so long as the facts or data are the kind on which experts in the particular field would reasonably rely.   *Id.*   An expert may also provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact.   Fed. R. Evid. 704.

### A.   Laboratory Analysis of Drugs and Testimony of Forensic Chemists

The United States intends to present evidence as to the laboratory analysis conducted on the controlled substances seized in this case through the testimony of two DEA forensic chemists.   The United States expects the chemists to testify as to the identity, net weights, and purity of the controlled substances.   Specifically, that their laboratory testing and analysis confirmed that the seized substances in this case were cocaine and more than 50 grams of pure methamphetamine hydrochloride.   The United States has made the required expert disclosures in discovery to the defense pursuant to Fed. R. Crim. P. 16(a)(1)(G).   The United States submits that such chemical analysis is beyond the experience of the typical

3

jury, and that the expert testimony will aid the jury on an element of all three

counts charged in the Indictment—the identity and weight of the controlled

substances.

### B.  Drug Trafficking Expert Testimony by Law Enforcement Agent

The United States intends to present expert testimony by a law enforcement

agent about drug trafficking practices, including the use of code words, street value

of drugs, quantities of methamphetamine and cocaine that are consistent with

distribution as opposed to personal use, common packaging and importation

methods for smuggling narcotics into the District of Hawaii, and the use of cellular

telephones in furtherance of drug trafficking.   The United States has made the

required expert disclosures in discovery to the defense pursuant to Rule

16(a)(1)(G).

The Ninth Circuit has held that, "[g]overnment agents or other persons may

testify as to the general practices of criminals to establish the defendants' modus

operandi.   This evidence helps the jury to understand complex criminal activities,

and alerts it to the possibility that combinations of seemingly innocuous events

may indicate criminal behavior."   *United States v. Valencia-Amezcua*, 278 F.3d

901, 909 (9th Cir. 2002) (internal citations and quotations omitted).   The standard

for expert qualification is "flexible," and can include a law enforcement expert

who testifies about certain criminal behavior and whose "reliability depends

heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Mendoza-Paz*, 286 F.3d 1104, 1112 (9th Cir. 2002) (citing *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000)).   The Ninth Circuit has repeatedly admitted the opinion testimony of a law enforcement witness on subjects related to drug trafficking.   *See e.g. Mendoza-Paz*, 286 F.3d at 1112 (admitting testimony of law enforcement narcotics expert on the subject of drug valuation); *United States v. Alatorre*, 222 F.3d 1098, 1104 (9th Cir. 2000) (affirming the admission of law enforcement expert testimony on drug value, distributable quantity, and structure and organization); *United States v. Sepulveda-Barraza*, 645 F.3d 1066, 1072 (9th Cir. 2011); *United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir. 1998), *overruled on other grounds by United States v. Hankey*, 203 F.3d 1160, 1169, n.7 (9th Cir. 2000) ("The jargon of the narcotics trade and the codes that drug dealers often use constitute specialized bodies of knowledge… and are therefore proper subjects of expert opinion.").

### C.  Data Extracted from Defendants' Cellphones and Testimony of Digital Investigative Analyst/Digital Forensics Specialist

The United States intends to admit data extracted from the cellular telephones of the defendants, using Cellebrite and other forensic tools, as evidence in its case-in-chief.   This data includes, but is not limited to, pertinent text and audio chat messages between Defendant Jacintho and coconspirators during and in furtherance of the conspiracy, pertinent messages exchanged between Defendant

Jacintho and the cooperating source ("CS"), a video of the defendants with the speaker box containing the approximately ten pounds of methamphetamine seized from the defendants on February 1, 2021, relevant web browser history, and location data.   Although data copied from an electronic device is self-authenticating as long as the individual who extracted the data complies with the certification requirements of Fed. R. Evid. 902(14), 902(11) and 803(6), the government intends to call a digital investigative analyst and/or a digital forensics specialist as a witness at the trial.   *See United States v. Nishida*, 2021 WL 3140331, *2 (9th Cir. 2021).

The Ninth Circuit has held that expert qualification was not required to admit testimony from an officer who used software to extract data from an electronic device.   *See United States v. Seugasala*, 702 F.App'x 572, 575 (9th Cir. 2017).   The Ninth Circuit's reasoning was that this process did not require technical or specialized knowledge that requires expert testimony.   *Id.*   However, the question does not appear to be definitively resolved.   *See United States v. Ovies*, 783 F.App'x 704, 707 (9th Cir. 2019) (holding that officer was permitted to testify about using software to extract data from defendant's cell phone without first qualifying as an expert; however, declining to reach the question whether "the introduction of Cellebrite evidence requires expert testimony").

Nevertheless, the United States intends to qualify a digital investigative

analyst or digital forensics specialist as an expert at trial and has provided notice to the defense.   Such testimony will lay the foundation to introduce text and audio chat messages, videos, photos, web search histories, location data, and other content on the cellular telephones of the defendants as substantive evidence in this case.

### (2)   Motion *in Limine* to Admit Recorded Calls and Text/Chat Messages

#### A.   Calls and Text/Chat Messages Between Defendant Jacintho and the Cooperating Source

As set forth above, this investigation was conducted with the assistance of a cooperating source ("CS").   Under the direction and supervision of law enforcement, on numerous occasions, the CS allowed agents to surreptitiously record phone conversations and messages exchanged between him and Defendant Jacintho.   In the conversations and messages, Defendant Jacintho made numerous inculpatory statements directly related to the charges in this case.   Those recorded communications, including the CS's statements, are admissible non-hearsay pursuant to Rules 801(c) and 801(d)(2)(A).

Statements offered for context or to show their effect on the listener are not hearsay.   Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."). As the Ninth Circuit held in *United States v. Barragan*, 871 F.3d 689 (9th Cir.

2017), "the informant's statements on the tapes were not hearsay because, as the court instructed the jury, they were offered only for context, not for 'the truth of the matter asserted.'"  *Id.* at 705 (quoting Fed. R. Evid. 801(c)(2) and citing *United States v. Valerio*, 441 F.3d 837, 844 (9th Cir. 2006) (district court did not abuse discretion in admitting recorded conversation between informant and defendant and instructing jury not to consider informant's statements for their truth)); *see also United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir. 1985) (concluding that informant's "statements were not admitted for their truth but to enable the jury to understand [a co-conspirator's] taped statements"); *United States v. Nguyen*, 230 F. App'x 686, 690 (9th Cir. 2007) ("The statements were properly admitted for the nonhearsay purpose of providing context for [defendant's] recorded statements, and not for truth.").   Similarly, a statement not offered "to prove the truth of the matter" but rather "to show the effect on the listener" is also non-hearsay.   *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991).

The admission of such out-of-court non-hearsay poses no Confrontation Clause problem because the Confrontation Clause only applies to hearsay. *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *Tennessee v. Street*, 471 U.S. 409, 414 (1985) ("The nonhearsay aspect of [the] confession — not to prove what

happened at the murder scene but to prove what happened when respondent confessed — raises no Confrontation Clause concerns.").

The Ninth Circuit has recognized this maxim as well.  *United States v. Orm Hieng*, 679 F.3d 1131, 1141 (9th Cir. 2012) ("[E]ven testimonial statements may be admitted without confrontation if they are offered for purposes other than establishing the truth of the matter asserted and, therefore, constitute nonhearsay.") (internal quotation marks omitted); *Renteria v. Subia*, 449 F. App'x 615, 617 (9th Cir. 2011) ("The challenged statement, which was not testimonial and was admitted as non-hearsay, did not implicate confrontation rights.").   Other circuits agree.  *See, e.g., United States v. Price*, 792 F.2d 994, 996-97 (11th Cir. 1986) (admission of recorded conversation between defendant and informant did not violate the Confrontation Clause because informant's statements were not offered to prove the truth of the matter therein, but rather for the limited purpose of making defendant's admission understandable to the jury); *United States v. Garcia-Guia*, 468 F. App'x 544, 549 (6th Cir. 2012) ("the statements were offered for non-hearsay purposes and constituted background information, which does not violate the Confrontation Clause").

Moreover, many of the words spoken by the CS in the phone calls do not qualify as a "statement" at all.   Fed. R. Evid. 801(a) ("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person meant

9

it as an assertion."). Much of the CS's conversation is in the form of questions posed to Defendant. Accordingly, these utterances are not assertions, and are non-hearsay.

Nor are the CS's statements unfairly prejudicial. *See United States v. Layton*, 855 F.2d 1388, 1402 (9th Cir. 1988) ("Rule 403 precludes only unfair prejudice.") (emphasis in original), *cert. denied*, 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989); *United States v. Bailleaux*, 685 F.2d 1105, 1111 & n.2 (9th Cir. 1982) (prejudice alone is insufficient; unfair prejudice is required); *United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003) ("'Unfair prejudice' ... means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one'"). The CS's statements are admissible to put in context Defendant's statements, which are admissible pursuant to Rule 801(d)(2)(A), and to show the statements' effects on the listener—Defendant's response and reaction to what the CS was saying as the conversation progressed. As to admissions of his own drug trafficking, Defendant cannot claim prejudice.

To the extent the Court is concerned that the jury may be confused about the purpose for which the CS's statements are offered, a limiting instruction can cure any potential issue. The United States suggests the limiting instruction the Ninth Circuit deemed fully effective in *Barragan*:

> Throughout the course of the trial, you have heard recordings that included statements made by government

informants.   It is the statements of those speaking to the
government informants that is to be considered by you as
evidence.   Such statements should be considered by you
in relation to all the other instructions I provide, and you
may give such statements as much weight as you think
they deserve.   Statements of government informants are
not to be considered for their truth, but only to put the
statements of those with whom they were talking into
context.

*Barragan*, 871 F.3d at 704-05 (quoting instruction); *id.* at 705 (noting that the

court's instruction was sufficient to "prohibit[] the jury from considering the

[informant's] statement for its truth")..

The Court should admit the entirety of the relevant recorded calls and

communications between the CS and Defendant Jacintho.   As noted above, neither

the hearsay rule nor the Confrontation Clause precludes the introduction of such

communications at trial.

**B.  Calls and Text/Chat Messages Between Defendant Jacintho and
Coconspirators**

As previously mentioned, the evidence which the United States intends to

admit at trial includes data extracted from Defendant Jacintho's cellular phone

including but not limited to, pertinent text and audio messages between Jacintho

and coconspirators during and in furtherance of the conspiracy.   Likewise, these

recorded communications are admissible non-hearsay pursuant to Rule

801(d)(2)(E).   As required for admissibility, a foundation will be made so that

each of those statements are shown to have been made by a coconspirator during

and in furtherance of the conspiracy.

### (3) **Motion *in Limine* to Admit Defendants' Post-Arrest Statements**

The United States intends to introduce post-arrest post-*Miranda* statements

made by both defendants to law enforcement.   These statements were not recorded

but will be admitted through the testimony of a law enforcement agent/officer to

whom Defendant made the statements or who was present at the time the

statements were made.   The statements are admissible pursuant to Rule

801(d)(2)(A).

Following their arrests, both defendants were separately advised of their

*Miranda* rights, and both signed written waivers acknowledging that they had been

advised of their rights and were freely and voluntarily consenting to questioning by

law enforcement.   Both defendants then made incriminating statements to law

enforcement agents.   Part of Defendant Jacintho's statement facially inculpates his

Codefendant Holi.   Defendant Holi's statement, however, does not facially

inculpate Jacintho.   The reports memorializing the defendants' statements to law

enforcement are attached hereto as Exhibits 1 and 2.

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held

that the Sixth Amendment's confrontation clause precluded the admission of a

non-testifying defendant's statement facially inculpating a codefendant

notwithstanding a curative instruction.   However, *Bruton* problems can be avoided

by excising the defendant's name and existence from the statement and giving proper limiting instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).   If too many details remain apparent in the redacted statement, the *Bruton* rule is violated. *See Gray v. Maryland*, 523 U.S. 185, 192-93 (1998).   *Bruton* does not bar the use of a redacted codefendant's confession just because the codefendant's statement becomes incriminating when linked with other evidence adduced at trial. *Richardson*, 481 U.S. at 208.   *See, e.g.*, *Mason v. Yarborough*, 447 F.3d 693, 696 (9th Cir. 2006) (no *Bruton* violation because statement of codefendant only incriminating when linked with other evidence and statement not introduced but merely referred to by government witness); *see also United States v. Mueller*, 661 F.3d 338, 349 (8th Cir. 2011) (Confrontation Clause not violated by admission of government agent's testimony regarding codefendant's confession because testimony made no specific reference to defendant); *United States v. Williamson*, 339 F.3d 1295, 1304 (11th Cir. 2003) (Confrontation Clause not violated because officer's testimony about codefendant's incriminating statement solicited by defense counsel's cross-examination and did not directly implicate defendant).

Although Defendant Jacintho's statement in part facially implicates Codefendant Holi, the statement can be sanitized so as not to run afoul of *Bruton*. The statements will be elicited from a law enforcement witness.   Counsel for the government will properly advise the witness in advance to assure that when

13

testifying about the statement made by Defendant Jacintho the witness makes no reference to Jacintho's statements about Defendant Holi.    Additionally, the Court can give a limiting instruction that Defendant Jacintho's confession is only to be considered against Jacintho.    Should Defendant Jacintho take the stand, however, there will be no *Bruton* issue.

**(4)    Motion *in Limine* to Preclude Defendants From Making Any Reference to Entrapment Prior to Government Calling First Witness**

The United States is not currently aware of any defenses the defendants intend to present at trial, however, they should be precluded from making any reference to entrapment during *voir dire* or opening statement.    This is not an entrapment case.

To obtain a jury instruction on entrapment, a defendant must make a threshold showing on two elements:    (1) that the government induced his crime; and (2) that he lacked the predisposition to engage in the crime.    *See United States v. Spentz,* 653 F.3d 815, 818 (9th Cir. 2011) ("While it can be slight, there still must be some evidence demonstrating the elements of the defense before an instruction must be given"); *United States v. Smith*, 924 F.2d 889, 898 (9th Cir. 1991) ("For the court to instruct on an entrapment defense, the defendant must present some evidence on both elements"); *United States v. Montoya*, 844 F.3d 63, 66 (1st Cir. 2016) (defendant has the burden of making a "two-part threshold

14

showing in order to put an entrapment defense before the jury").   Similarly, if the prosecution has sufficiently rebutted a showing of either inducement or a claim of lack of predisposition, an entrapment instruction should not be given.   *United States v. Hoyt*, 879 F.2d 505, 509 (9th Cir. 1989).

While Defendant Jacintho may try and claim inducement because a cooperator was involved, Jaicntho was conspiring with others and the evidence will quickly show that there was no inducement by the government as to either defendant.   Furthermore, the evidence will show that at least Jacintho was predisposed to drug trafficking.   Defendants will not be able to make anything close to a sufficient showing with respect to both elements.   Defendants must make the threshold showing required for the entrapment instruction through evidence, not mere argument.   Accordingly, Defendants should not be permitted to make any reference to entrapment prior to the government calling its first witness as it would only serve to confuse the jury.

//

//

//

//

//

//

15

## **Conclusion**

Based on all of the above, the United States respectfully requests that its

motions *in limine* be granted.

DATED:   May 8, 2023, at Honolulu, Hawaii.

CLARE E. CONNORS
United States Attorney
District of Hawaii

By */s/ Margaret C. Nammar*
    MARGARET C. NAMMAR
    Assistant U.S. Attorney

    Attorneys for Plaintiff
    UNITED STATES OF AMERICA